**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JOHNNA L. R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 25-cv-00107-SH |
| FRANK BISIGNANO,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Johnna L. R. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

### I.    Disability Determination and Standard of Review

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).  Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Background and Procedural History

Plaintiff protectively filed an application for Title II benefits on May 25, 2022. (R. 199–203.)  In her application, Plaintiff alleged she has been unable to work since December 1, 2020, due to conditions including three neck fusions at C4–C7, chronic pain, migraines, osteoarthritis, cholesterol, and shoulder injury.  (R. 202, 247.)  Plaintiff was 47 years old on her date last insured.  (R. 20, 202.)  Plaintiff has a GED and past relevant work as a personal care aide, a certified nursing assistant, and a delivery driver.  (R. 248, 74.)

Plaintiff's claim was denied initially and upon reconsideration.  (R. 94–103, 114–21.)  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  (R. 123–24, 38–79.)  The ALJ denied benefits and found Plaintiff not disabled. (R. 17–32.)  The Appeals Council denied review on January 2, 2025 (R. 1–6), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.  Plaintiff now appeals.

## III.   The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through March 31, 2021.  (R. 20.)  The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity from her alleged onset date through her

date last insured. (*Id.*) At step two, the ALJ found Plaintiff to have the severe impairment of degenerative disc disease. (*Id.*) The ALJ found other impairments non-severe, including Plaintiff's low vision. (R. 20–22.) At step three, the ALJ found Plaintiff's severe impairment did not meet or equal a listed impairment. (R. 22–23.)

The ALJ then determined that Plaintiff had the RFC to perform sedentary work with additional exertional and postural limitations. (R. 23–24.) The ALJ provided a recitation of the evidence that went into this finding. (R. 24–29.) At step four, the ALJ found Plaintiff unable to perform her past relevant work. (R. 29–30.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as food and beverage order clerk, surveillance system monitor, and information clerk. (R. 30–31.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 31–32.)

## IV.    Issues

On appeal, Plaintiff makes several arguments related to the determination of her RFC, maintaining (1) the ALJ improperly considered the supportability and consistency of the prior administrative medical findings (Dkt. No. 9 at 5–8); (2) the ALJ's symptom assessment was unsupported (*id.* at 13–15); (3) the ALJ erred in finding no visual limitations (*id.* at 8–10); and (4) the ALJ erred in finding Plaintiff's physical limitations allowed for sedentary work (*id.* at 10–13). Plaintiff also argues the ALJ failed to consider Listing 2.03B at step three. (*Id.* at 10). The Court finds no error.

### V.    Analysis

#### A.    The ALJ's RFC Assessment

As noted, while Plaintiff touches on other steps of the sequential process, the core of her argument revolves around the ALJ's RFC evaluation.  The Court will consider Plaintiff's RFC arguments first.

#### 1.    RFC—Generally

To proceed to steps four and five, the ALJ must first determine a claimant's RFC. That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting.  20 C.F.R. § 404.1545(a)(1).  The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations."  *Id*.  As Social Security Ruling ("SSR") 96-8p clarifies, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  1996 WL 374184, at *3 (July 2, 1996).  Such analysis must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved."  *Id*. at *7.

At the RFC stage, an ALJ considers "the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*."  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (citing 20 C.F.R. § 404.1545(a)(2)).  A claimant's RFC is "based on all the relevant medical and other evidence" in the record.  20 C.F.R. § 404.1520(e). Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings.  *Id*. § 404.1513(a).

### 2.   Prior Administrative Medical Findings

Plaintiff first challenges the ALJ's consideration of prior administrative medical findings.  (Dkt. No. 9 at 3, 5–8).

### a.   Findings—Generally

A prior administrative medical finding is a finding "about a medical issue" from the Social Security Administration's "Federal and State agency medical and psychological consultants at a prior level of review" in the current claim.  20 C.F.R. § 404.1513(a)(5). Such findings include the existence and severity of the impairments and symptoms; whether the impairments meet or medically equal a listing; and the claimant's RFC.  *Id*. § 404.1513(a)(5)(i)–(iv).

When considering these findings, an ALJ does not defer or give them any specific evidentiary weight.  *Id*. § 404.1520c(a).  Instead, the ALJ evaluates and articulates the "persuasiveness" of the findings by considering five factors.  *Id*. § 404.1520c(a)–(c).  Of these, the ALJ usually must explain only how she considered two—supportability and consistency. *Id*. § 404.1520c(b)(2).  Supportability is internal to the medical source.  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her . . . prior administrative medical finding(s), the more persuasive the . . . prior administrative medical finding(s) will be."[2]   *Id*.

---

[2] "We could rephrase this as a requirement to ask, 'Are the examiner's opinions well explained, and are they supported by the medical evidence he or she relied upon?'" *Riley v. Comm'r*, No. 25-5007, 2025 WL 3276227, at *2 (10th Cir. Nov. 25, 2025) (unpublished).  Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

§ 404.1520c(c)(1). Consistency, meanwhile, is more external.[3] "The more consistent a . . . prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the . . . prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

### b.    Findings at Issue

At issue here are the prior administrative medical findings of Drs. Herbert Meites and Cheryl Arenella.  On initial evaluation, Dr. Meites found insufficient evidence to determine the severity of Plaintiff's condition on or before her date last insured and found Plaintiff was not statutorily blind.[4]  (R. 82.)  Relevant to Plaintiff's arguments, Dr. Meites referred to Plaintiff's October 19, 2022, eye exam (R. 585–90) and her evaluation on March 27, 2023 (R. 734–39), and found the impairment of low vision to be non-severe.  (R. 83.)  On reconsideration, Dr. Arenella reached the same conclusions.  (R. 88–90.)

The ALJ found these opinions partially persuasive.  (R. 28–29.)  Regarding the findings and Plaintiff's vision, the ALJ stated:

> The claimant's vision evaluation . . . showed she was able to navigate independently in the consultative examination office (Exhibit 8F).  The claimant testified she was able to drive during the period prior to the date last insured, [and] this is consistent with the severity finding.  The reviewing consultant supported the reconsideration level findings, noting the medical evidence of record at the time of reconsideration did not speak to vision problems (Exhibit 4A, page 3). . . .
>
> The presence of a non-severe vision impairment . . . is accepted as persuasive.  This is adequately supported and consistent with substantial evidence.

(R. 28.)

---

[3] The consistency analysis may also include consideration of internal conflicts within evidence from the same provider.  *Evaluating Med'l Opinions and Prior Admin. Med'l Findings–Claims Filed on or after Mar. 27, 2017*, Program Operations Manual System, DI 24503.025(E)(2).

[4] Plaintiff does not dispute the blindness finding.  (Dkt. No. 9 at 5, 9.)

### c.    The ALJ's Persuasiveness Findings are Supported by Substantial Evidence

Plaintiff first attacks the ALJ's supportability finding, arguing the evidence did not support a determination that Plaintiff's low vision impairment was non-severe or that it resulted in no limitations. (Dkt. No. 9 at 6–7.) For this argument, Plaintiff relies on the March 2023 exam discussed at both the initial evaluation and reconsideration. (*Id.* at 5–6.) In that exam, performed almost two years after the date last insured,[5] Plaintiff complained of blurry vision in both eyes, which she said had been going on for 10 years, was worsening, and was somewhat relieved through use of spectacles. (R. 734.) She also complained of "silver showers" in her vision, starting around October 2021, which was over five months after her date last insured.[6] (*Id.*) Dr. Rachel Sires then performed a variety of tests. (R. 734–36.) She assessed Plaintiff with presbyopia, other subjective visual disturbances, unspecified optic atrophy, and generalized contraction of the visual field bilaterally. (R. 736.) Dr. Sires noted that no treatment would improve Plaintiff's reduced best-corrected visual acuity and constriction of visual field due to optic atrophy. (R. 737.)

In her decision, as discussed above, the ALJ found the prior administrative medical findings supported because the medical evidence "did not speak to vision problems."

---

[5] In Title II cases, a claimant must establish disability prior to the expiration of her insured status. *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996). But, "evidence documenting a claimant's condition after her date last insured may be considered if it relates to the insured period." *White v. Berryhill*, 704 F. App'x 774, 779 (10th Cir. 2017). This is because, such records might provide indirect evidence as to impairments existing before the last insured date. *Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 479 (10th Cir. 1993).

[6] Plaintiff cites no evidence indicating the silver showers occurred during the insured period, and the Court does not consider them further.

(R. 28 (citing R. 89).)    Both administrative medical findings noted that there was "insufficient evidence to determine the severity of the claimant's condition" on or before the date last insured (R. 82, 89), and the reconsideration finding specifically noted that all the medical evidence of record—such as Plaintiff's exam with Dr. Sires—was after the date last insured (R. 89).    As such, there is substantial evidence for the ALJ's determination of the supportability regarding these findings.

Plaintiff next attacks the ALJ's consistency finding, citing a January 2023 vision questionnaire; an October 2022 vision exam and self-reports; and Plaintiff's self-reports in March and April 2023.  (Dkt. No. 9 at 7–8 (citing R. 256, 586, 589–90, 734, 770).)  But the ALJ based her consistency assessment on evidence relating to the time before the date last insured—Plaintiff's testimony that she could drive during that period.  (R. 28.)  Substantial evidence supports this finding.  (R. 52 (Plaintiff's testimony noted she drove during the insured period occasionally, when she could not get a ride, but that she could not read signs in the distance).)  The Court will not take Plaintiff's invitation to weigh the evidence differently.

### 3.    Symptom Analysis

Plaintiff also attacks the ALJ's assessment of her vision symptoms and pain in determining the RFC.  (Dkt. No. 9 at 13–15.)

### a.    Evaluation of Symptoms—Generally

The regulations define "symptoms" as a claimant's "own description of [her] physical or mental impairment."  20 C.F.R. § 404.1502(i).  When evaluating symptoms, the ALJ uses a two-step process.  *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529.  First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or

psychological abnormalities and could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(b).  Second, once such impairments are established, the ALJ must evaluate the intensity and persistence of the symptoms so she can determine how the symptoms limit the claimant's capacity for work.  *Id*. § 404.1529(c)(1).

Factors the ALJ should consider include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) other factors concerning functional limitations and restrictions due to the symptoms.  *Id*. § 404.1529(c)(3)(i)–(vii).  The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).  However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence [she] relies on" in the evaluation.  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence."  *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).  This is particularly true given that courts are prohibited from reweighing evidence or substituting their judgment for that of the Commissioner, *Bowman*, 511 F.3d at 1272, even if they would have reached a different conclusion, *White*, 287 F.3d at 908.

That is not to say, however, that the ALJ may simply make "a single, conclusory statement" that the individual's symptoms have been considered or that the claimant's statements are/are not consistent.  SSR 16-3p, at *10.  The ALJ's decision "must contain

specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

### b.    ALJ's Symptom Analysis—Vision

Here, the ALJ properly accounted for Plaintiff's symptoms.  At step two, she found both severe and non-severe medically determinable impairments.  (R. 20–22.)  She then considered these impairments, which could reasonably be expected to produce Plaintiff's symptoms, in conjunction with the evidence of record in order to determine how their intensity and persistence limited Plaintiff's capacity to work.  (R. 21–22, 24–29.)

Regarding the visual impairment, the ALJ summarized Plaintiff's administrative hearing and subjective testimony, as well as the medical exams conducted after Plaintiff's date last insured.  (R. 21–22, 24.)  This included an evaluation of how Plaintiff's visual limitations affected her daily activities, such as driving (R. 21); the location and frequency of her symptoms (R. 21–22 (both during and after the relevant period)); precipitating and aggravating factors (R. 21 (noting Plaintiff's reports that darkness, light, migraines, reading, and writing all affected her vision)); treatment aside from medication (*id.* (noting Plaintiff wore glasses)); and other measures Plaintiff has used to relieve symptoms (*id.* (noting she only drove when necessary and limited her activities due to "low vision")). Though the ALJ's conclusion regarding the intensity and persistence of Plaintiff's symptoms does not track with how severe Plaintiff argues they are on appeal,[7] the

---

[7] Plaintiff did not report vision issues in her initial application.  (R. 247.)

assessment went beyond a single, conclusory statement that Plaintiff's vision was considered and was not consistent with the record.

Plaintiff specifically argues that the ALJ's findings are unsupported, because they are inconsistent with the 2023 visual exam and with Plaintiff's reports that, while she did drive, she had difficulties doing so. (Dkt. 9 at 13–14.) But the ALJ considered all of this evidence and simply weighed it differently than Plaintiff would like. This is all that was required. The Court declines to reweigh the evidence.

### c.    ALJ's Symptom Analysis—Pain

As for Plaintiff's reports of pain, the ALJ reviewed Plaintiff's own statements against the record as a whole. (R. 24–29.) While not framed as a factor-by-factor discussion, the ALJ adequately assessed the regulatory factors. *See* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Regarding Plaintiff's activities of daily living, she considered Plaintiff's reports that pain in her neck made driving difficult and made basic self-care tasks impossible (rendering her bed-bound), but that Plaintiff also reported being able to do activities of daily living with medication and that after her March 2021 surgery, she reported riding a bike. (R. 24–26.) Regarding the location, duration, frequency, and intensity of Plaintiff's symptoms, the ALJ considered Plaintiff's reports that pain incapacitated her—and functionally limited her ability to lift, use her arms, sit, and work overhead—as well as objective exam findings showing, for instance, Plaintiff's gait, extremities, and strength were normal, and that her pain improved for a time after her March 2021 surgery. (R. 24–28.) Regarding precipitating and aggravating factors, the ALJ considered Plaintiff's reports of activities that exacerbated her pain and, regarding Plaintiff's use of medication, considered that during the relevant period Plaintiff reported being able to do her activities of daily living while on medications such as Tramadol and

Baclofen. (R. 24–25.) As medication and non-surgical methods such as epidural injections ultimately proved ineffective, however, the ALJ also considered Plaintiff's surgeries and the extent to which they were helpful in relieving pain. (R. 26–28.) Only after an evaluation of this evidence did the ALJ conclude that "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record," and that a limitation to a "range of sedentary work is most consistent with the evidence." (R. 25, 28.) This was a sufficient evaluation of Plaintiff's pain.

Plaintiff complains that the ALJ noted improvement in Plaintiff's pain symptoms after her March 2021 surgery and did not focus on her later degeneration and additional surgery. (Dkt. No. 9 at 15.) But the ALJ considered all of this (R. 26–28) and made an RFC finding based on Plaintiff's capacity during the period at issue. Plaintiff also complains that the ALJ relied only on objective medical findings. (Dkt. No. 9 at 15.) As noted above, however, the ALJ relied on more than that. Plaintiff has failed to demonstrate error.

### 4. Visual Limitations in the RFC

Additionally, Plaintiff argues the ALJ failed to accommodate her non-serve visual impairment, as there were no vision limitations in the RFC. (Dkt. No. 9 at 8–10.) The Court finds no error.

The ALJ first addressed Plaintiff's visual limitations at step two, considering Plaintiff's subjective statements about vision after the insured period, as well as her hearing testimony about vision during the period at issue. (R. 21.) This included reports of problems with driving, reading and writing, peripheral vision, and headaches. (*Id.*) The ALJ also recounted Dr. Sires's 2023 visual exam and contrasted some of Plaintiff's

statements in the exam—such as her report of "silver showers"—with her other statements. (*Id.* (noting "silver showers" did not begin until after her date last insured, but crediting Plaintiff's indication that she had a ten-year history of blurry vision).) Considering this, the ALJ determined "the evidence in the record <u>through the date last insured</u> does not establish that the claimant's vision impairment significantly limited her physical or mental ability to do basic work activities." (R. 22 (emphasis added).)

But the ALJ did not end her analysis there. As required, the ALJ considered Plaintiff's non-severe impairments—including her visual impairment—beyond step two. *See* 20 C.F.R. § 404.1545(a)(2). Particularly, after the detailed recounting of subjective testimony and objective evidence regarding Plaintiff's vision, the ALJ indicated she "considered all the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity," but finding the non-severe impairments did not cause limitations beyond those noted in the RFC. (R. 22.) *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("our general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter"). Further, the ALJ considered Plaintiff's vision-related hearing testimony in her RFC discussion (R. 24), as well as the vision statements contained in the prior administrative medical findings (R. 28). Thus, the ALJ derived her RFC conclusion regarding Plaintiff's (lack of) visual limitations during the relevant period from objective medical evidence, nonmedical sources, and prior administrative medical findings. 20 C.F.R. § 404.1513(a).

Plaintiff again points to Dr. Sires's 2023 exam as showing that the RFC was unsupported. (Dkt. No. 9 at 9–10.) But the ALJ considered this post-insured evidence and evaluated its objective findings in relation to Plaintiff's subjective statements about

vision during the relevant period.  The ALJ also considered Dr. Sires's findings in relation to the lack of other evidence supporting vision issues during the period under review.  Plaintiff's contention that Dr. Sires's examination precluded the ALJ's RFC findings is, yet again, a thinly veiled request for the Court to reweigh evidence, which it declines to do.  *See Bowman*, 511 F.3d at 1272.  Even if the Court might have reached a different conclusion, it finds no error in the ALJ's consideration of Plaintiff's visual impairments.

### 5.    Physical Limitations in the RFC

Likewise, Plaintiff argues the ALJ "fails to link specific evidence in the record to her finding that Claimant can perform sedentary work prior to the date last insured but not after July 19, 2021." (Dkt. No. 9 at 10.)  The Court disagrees.

The ALJ reached the RFC here by assessing the requisite categories of evidence and discussing the extent they demonstrated functional limitations.  (R. 24–29.)  She considered (1) evidence from nonmedical sources (R. 24–25[8]); (2) medical evidence and Plaintiff's subjective reports during the relevant period (R. 25–28[9]); (3) medical evidence and subjective reports <u>after</u> the relevant period (R. 26–28[10]); and (4) prior administrative medical findings (R. 28–29).  On appeal, Plaintiff points to evidence that the ALJ

---

[8] Considering Plaintiff's testimony regarding, for instance, her ability to drive, her functionality on medication, her ability to lift and use her upper extremities, and her ability to work and conduct activities of daily living while on medication.  (*Id.*)

[9] Considering, for instance, Plaintiff's normal gait, lack of abnormality in extremities, and normal strength and balance on exam.  (R. 25–27 (including post-operative improvement after an anterior cervical approach fusion in March 2021)).  Also considering Plaintiff's reports of "3-month history of progressively worsening neck pain and increasing numbness of the left upper extremity" prior to her March 2021 surgery, as well as her reports of some pain improvement after surgery.  (*Id.*)

[10] Noting Plaintiff's slight improvement after her March 2021 fusion—which included reports of activity such as bike riding—as well as the degeneration of her condition which required another surgery in August 2021.  (*Id.*)

considered and discussed—as well as her own subjective reports of pain and capacity to work—as showing this assessment was erroneous.

Primarily, Plaintiff challenges the ALJ's determination that Plaintiff's cervical condition improved after her March 2021 surgery, only to deteriorate months later. (Dkt. No. 9 at 10–12.) But, as noted, the ALJ cited sufficient evidence for this determination. Plaintiff points out that she reported being unable to work since 2020 due to pain and that she was reliant on pain medication for her activities of daily living. (*Id.* at 11.) Yet, the ALJ took this into account. (R. 25 (noting report in 2020 when Plaintiff indicated she "could not work without medications for severe neck pain and shoulder pain").) And, as noted above, the ALJ adequately evaluated Plaintiff's symptoms contrary to her claims otherwise. (*See* Dkt. No. 9 at 11 ("the ALJ does not explain how she determined Claimant's symptoms . . . allowed for" the RFC).) Finally, though Plaintiff quibbles with the notation that the C6-7 joint was not the same joint at issue in Plaintiff's initial surgery in 2016 (R. 27–28), it is undisputed that whichever vertebrae the ALJ found to be most affected, she determined Plaintiff's condition "has been present since the alleged onset of disability" and simply concluded it was less functionally debilitating during the insured period than Plaintiff would have liked. Based on the ALJ's assessment of record evidence, the Court finds no error.

## B.   ALJ's Step Three Analysis

Lastly, Plaintiff argues the ALJ's step-three analysis "did not properly explain whether Claimant meets Listing 2.03B during the time at issue" and the "ALJ's brief discussion of Claimant's infrequent driving and ability to 'navigate' an office while failing to discuss the evidence relevant to listing 2.03B is insufficiently specific for judicial

review." (Dkt. No. 9 at 10.) As the ALJ found Plaintiff's visual impairment non-severe, however, the Court finds no error.

Here, at step two, the ALJ determined that Plaintiff's visual impairment was non-severe, as it did not significantly limit her ability to do basic work activities during the insured period. (R. 20–22.) Considering the assessment of evidence the ALJ engaged in to reach this determination, the Court finds her conclusion was supported. *See* 20 C.F.R. § 404.1522(a). "At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (emphasis added) (internal quotations omitted); 20 C.F.R. § 404.1520(a)(4)(ii)–(iii).[11] Because the ALJ properly found Plaintiff did not have a medically severe visual impairment, she was not required to assess whether it met or equaled a listing. Though this did not relieve the ALJ of her duty to discuss non-severe impairments at the RFC stage, Plaintiff's complaints as to her step three analysis are unpersuasive.

## VI.   Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is AFFIRMED.

**SO ORDERED** this 27th day of March, 2026.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[11] *Cf.* 20 C.F.R. § 404.1520a(d)(2) (when evaluating mental impairments, if "your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder" (emphasis added)).